**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHWESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Criminal Action |
| ) | No. 07-050620-16-CR-SW-ODS |
| ) | |
| JUAN LARA, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b), the above-styled criminal action was referred to the undersigned for preliminary review. This matter comes before the Court on defendant's Motion to Suppress, to which the government has responded.

Defendant contends that there was insufficient probable cause to support a full-custodial arrest subsequent to his detention for a traffic violation; that he did not knowingly and intelligently consent to the search of his vehicle; and that he did not knowingly and intelligently waive his Miranda rights prior to being interrogated by police officers. A hearing was held before the undersigned on June 4, 2008. Defendant was represented by counsel, John Appelquist, and the government was represented by Assistant United States Attorney David P. Rush.

It is the government's contention that the search was a lawful search incident to arrest, or alternatively, that it was based on probable cause that defendant had committed a crime.

At the beginning of the hearing, defendant stipulated to the facts as represented by the

1

government regarding the factual history leading up to the police encounter with defendant on August 3, 2007.

The government first called Special Agent William Henry of the Drug Enforcement Agency ["DEA"], who testified that he was involved in an investigation focusing on the distribution of methamphetamine involving a number of subjects between California and Missouri in 2007. On August 3, 2007, he came into contact with defendant. This was the culmination of a sixth-month investigation, where several people, including defendant, were arrested during the delivery of approximately 30 pounds of methamphetamine. Defendant had been stopped by Shawnee, Kansas, police officers, pursuant to a traffic stop, for driving left of center after his vehicle had been observed crossing over the double lines. Agent Henry arrived on the scene and placed defendant under arrest for conspiracy to distribute methamphetamine. There were several simultaneous arrests going on. He transported defendant to a neutral spot in a parking lot where there were other defendants and other officers present. Agent Henry interviewed defendant after he and Officer Bennett separated him and got him into the shade because of the heat. He verbally advised defendant of his Miranda rights. They interviewed him as soon as his rights were read. Defendant spoke English, and stated that he understood what his rights were. They asked him about his tattoos, and in response, defendant stated that he'd gotten tattoos in the past and had been in prison in the past. Defendant told them that he spoke English and Spanish, and that he acted as an interpreter to facilitate drug purchases between David Cerpa, the source of the methamphetamine, Randy Lucero, another distributor, and Mike Wilson, the ultimate recipient of the methamphetamine. He said that they were in Kansas City to deliver methamphetamine. The officer made no threats or promises to defendant during the interview. There were other officers present, but they were separated from

the others for privacy reasons. Agent Henry believed defendant to be in his late 50s. He acknowledged that there was an issue in some reports referencing defendant's consent to search the vehicle he was in. Agent Henry and Officer Bennett tried to ascertain who obtained consent among the twenty officers who were there, and they were unable to make a determination of who had done so.

On cross examination, Agent Henry testified regarding who obtained consent to search defendant's vehicle. He admitted that it was possible that no one obtained consent. He agreed that there were three different vehicles under surveillance, and all of the vehicles were stopped by officers of the Shawnee Police Department and brought to the same location for questioning and inventory. The report of Officer Karlin of the that police department indicates that he arrested defendant at Agent Henry's instruction, and Officers Karlin and Ramsey both handcuffed him. Those officers did not read defendant his rights. Agent Henry agreed that his report indicates that he questioned defendant and he stated that he understood his rights, even though it doesn't say he actually read him his rights. Upon questioning, the officer admitted that a confidential source indicated that defendant was not a good interpreter.

On redirect examination, the officer stated defendant never acted like he didn't understand what was being said to him. And, he had no trouble understanding defendant. At no time did defendant ever ask him or tell him that he did not understand his questions.

The government next called Pamela Bennett, who is employed by the Kansas City Missouri Police Department. She is currently assigned to DEA. On August 3, 2007, she was with Agent Henry for the purpose of interviewing defendant after he'd been taken into custody. She confirmed that Agent Henry advised defendant of his Miranda rights, and that he was under arrest. He

indicated that he understood his rights, and agreed to speak to the officers. Defendant was very cooperative, and it was a smooth interview, which lasted about 10 minutes. She was not carrying a weapon. Defendant advised them that he was acting as an interpreter for the group. He never indicated that he did not understand their questions, and she had no trouble understanding him. Defendant is about 59-60 years old. Defendant admitted that he'd had prior contact with law enforcement for narcotics violations. There was no threat nor any coercion during the interview.

On cross examination, Officer Bennett testified that she did not prepare any kind of report regarding this incident. She believed that Agent Henry just read defendant his rights from memory, and there was no form for defendant to sign. At first, defendant stated he was in Kansas City to purchase chickens, but after talking to the officers and acknowledging his previous law enforcement contact, he stated that he was there as an interpreter for the methamphetamine deal.

At the close of the hearing, the government conceded that it has no evidence that defendant gave consent to search his vehicle. It is argued, however, that there was probable cause to arrest him and to search the vehicle, believing that there was probable cause to believe it contained the load of methamphetamine. It is also contended that the vehicle could have been searched incident to that arrest. Further, the government asserts that, under the inevitable discovery rule, the vehicle would have been inventoried and searched after it was seized.

Having fully reviewed the evidence before it, the Court finds that it must be recommended that defendant's motion to suppress be denied. Regardless of defendant's contentions, it is clear that there was probable cause to support his arrest subsequent to his detention for a traffic violation. Pursuant to a lengthy investigation, about which the facts are not in dispute, defendant was arrested

4

for conspiracy to distribute methamphetamine.  The investigation included surveillance, search warrants, recorded phone calls, recorded text messages, confidential informants, and a state wiretap. Law enforcement were aware that a methamphetamine delivery was scheduled to occur in Kansas City.  During surveillance, defendant was observed meeting other subjects of the investigation.  At the time of the traffic stop, defendant had been seen with the other subjects, who were in a separate vehicle, and who attempted to elude surveillance officers.  Defendant and the other subjects were subsequently apprehended.   It is clear that, under the totality of the circumstances, the officers had probable cause to believe that defendant was involved in a conspiracy to distribute methamphetamine.  Accordingly, the Court finds that defendant's challenge to his arrest is without merit.

Regarding the consent to search the vehicle, the government has conceded that it does not have enough evidence to support a consent theory.  Under the facts as stipulated and as presented at the hearing, however, it is obvious that the officers had probable cause to search the vehicle, and that it could also be searched incident to the arrest.            Pursuant to their extensive investigation, the officers had information that defendant's vehicle was involved in the drug conspiracy, and was believed to be the vehicle carrying the methamphetamine.  Given that they had probable cause to believe that the vehicle contained evidence of criminal activity, their search of the vehicle was permissible under the automobile exception.  United States v. Ross, 456 U.S. 798 (1982). Additionally, based on the officers' probable cause to arrest defendant, they were permitted to search the vehicle incident to that arrest.  New York v. Belton, 453 U.S. 454 (1981).  The Court finds, therefore, that the search of the vehicle fell within the parameters of the law.

Defendant also asserts that he did not knowingly and intelligently waive his Miranda rights

5

prior to being interrogated by police officers. Both Agent Henry and Officer Bennett credibly testified that defendant was read his <u>Miranda</u> rights, and that he indicated that he understood and waived them. They testified that no threats or coercion were employed, that the interview was 10-15 minutes in length, that it was conducted in the shade because it was a hot day, and that defendant was very cooperative. Officer Bennett testified that she was not carrying a weapon. Defendant is approximately 60 years old, and had extensive prior experience dealing with law enforcement. He was acting as an interpreter in the drug conspiracy, and both officers testified that there did not appear to be any language barrier. Accordingly, the Court finds that, under the totality of the circumstances, defendant made a valid waiver of his rights. <u>North Carolina v. Butler,</u> 441 U.S. 369, 373 (1979); <u>United States v. Jones,</u> 23 F.3d 1307, 1313 (8th Cir. 1994).

The Court finds, therefore, that it must be recommended that defendant's Motion to Suppress be denied.

For the foregoing reasons, it will be

RECOMMENDED that defendant's Motion to Suppress be denied.

> /s/ James C. England
> JAMES C. ENGLAND, CHIEF
> UNITED STATES MAGISTRATE JUDGE

DATE:   06/25/2008

6